Civil Case No. 4:16-cv-02466

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

In re:  Black Elk Energy Offshore Operations, LLC
Debtor

PLATINUM PARTNERS VALUE ARBITRAGE FUND LP, PLATINUM PARTNERS
LIQUID OPPORTUNITIES MASTER FUND LP, and TKN PETROLEUM OFFSHORE LLC
Appellants

vs.

BLACK ELK ENERGY, LLC, BLACK ELK MANAGEMENT, LLC, BLACK ELK
EMPLOYEE INCENTIVE, LLC, FREEDOM WELL SERVICE, LLC, IRON ISLAND
TECHNOLOGIES, LLC and JOHN HOFFMAN
Appellees

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
BANKRUPTCY CASE NO. 15-34287

---

**APPELLANTS' BRIEF**

---

BAKER BOTTS L.L.P.
Danny David
State Bar No. 24028267
danny.david@bakerbotts.com
Kevin T. Jacobs
State Bar No. 24012893
kevin.jacobs@bakerbotts.com
Omar J. Alaniz
State Bar No. 24040402
omar.alaniz@bakerbotts.com
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-4055

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Appellants Platinum Partners Value Arbitrage Fund LP, Platinum Partners Liquid Opportunities Master Fund LP, and TKN Petroleum Offshore LLC, by the undersigned counsel, certifies that (1) Platinum Partners Value Arbitrage Fund LP and Platinum Partners Liquid Opportunities Master Fund LP have no parent corporations and TKN Petroleum Offshore LLC TKN Petroleum Offshore is a wholly-owned subsidiary of Platinum Partners Value Arbitrage Fund; and (2) no publicly-held corporation owns more than ten percent (10%) or more of any of the Appellants' stock.

Dated:  October 12, 2016                          Respectfully submitted,

*/s/ Omar J. Alaniz*

BAKER BOTTS L.L.P.
Danny David
State Bar No. 24028267
danny.david@bakerbotts.com
Kevin T. Jacobs
State Bar No. 24012893
kevin.jacobs@bakerbotts.com
Omar J. Alaniz
State Bar No. 24040402
omar.alaniz@bakerbotts.com
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-4055

*Counsel to Platinum Partners Value Arbitrage Fund LP, Platinum Partners Liquid Opportunities Master Fund LP, and TKN Petroleum Offshore LLC*

i

**TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED ...................................................................................... 1

STANDARD OF REVIEW ............................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

      A.    The Hoffman Parties move for relief from the automatic stay on a number of claims. ...................................................................................2

      B.    At the hearing on their motion, the Hoffman Parties orally describe in scant detail a new Tax Claim and seek relief from the stay on that claim as well. ...........2

      C.    The bankruptcy court denies the Hoffman Parties relief on the claims presented in their written motion, but allows them to pursue the Tax Claim they raised at the hearing. ...................................................................................4

SUMMARY OF ARGUMENT ......................................................................... 5

ARGUMENT AND AUTHORITIES ................................................................. 5

I.    The Bankruptcy Court Erred By Granting The Hoffman Parties Relief From The Automatic Stay On Their Tax Claim Despite Their Failure To Provide The Most Basic Information About That Nebulous Claim. ........................................................... 5

II.    The Bankruptcy Court Erred By Granting The Hoffman Parties Relief From The Automatic Stay Because The Bankruptcy Estate Possesses Exclusive Standing To Pursue The Tax Claim. ........................................................... 8

CONCLUSION ............................................................................................... 11

CERTIFICATE OF SERVICE ........................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Caspri Corp.*,
    No. 07-30485-LMC, 2010 WL 743914 (Bankr. W.D. Tex. Feb. 25, 2010)..........................6, 7

*Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum*
    *Co.)*, 208 F.3d 498 (5th Cir. 2000) ...........................................................................1

*Highland Captial Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas*
    *Petrol., Inc.)*, 522 F.3d 575 (5th Cir. 2008) .......................................................1, 6, 7

*Schimmelpenninck v. Byrne (In re Schimmelpenninck)*,
    183 F.3d at 360 (5th Cir. 1999) ................................................................8, 9, 10, 11

*S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*,
    817 F.2d 1142 (5th Cir. 1987) ................................................................................6, 9

STATUTES

11 U.S.C. § 362(a) ...........................................................................................................2, 6

28 U.S.C. § 157(a) ...............................................................................................................1

28 U.S.C. § 158(a) ...............................................................................................................1

28 U.S.C. § 1334(b) .............................................................................................................1

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) because this proceeding arises under the bankruptcy code and General Order 2012-6 automatically refers all such cases and proceedings in this judicial district to the bankruptcy courts.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a) because this is an appeal from a final order of a bankruptcy court in this judicial district.  This appeal is timely, as Appellants filed their notice of appeal on August 9, 2016 (Dkt. No. 1246),[1] which is within 14 days of the bankruptcy court's July 26, 2016 Order (Dkt. No. 1225).

## ISSUES PRESENTED

1.  Did the bankruptcy court err by granting relief from the automatic stay on a claim that was not included in the written motion and described orally at the hearing in only minimal detail?

2.  Did the bankruptcy court err by granting relief from the automatic stay on a claim against certain shareholders of the Debtor on the theory that those shareholders caused the Debtor to breach its contractual duties to all shareholders?

## STANDARD OF REVIEW

In this Court's review of the bankruptcy court's order, "conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo."  *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000).  "Whether a specific cause of action belongs to a bankruptcy estate is . . . a matter of law that . . . [is] decide[d] by reference to the facial allegations in the complaint."  *Highland Captial Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petrol., Inc.)*, 522 F.3d 575, 583 (5th Cir. 2008).

---

[1]  All "Dkt. No." references refer to the filings in the bankruptcy court unless otherwise indicated.

## STATEMENT OF THE CASE

**A.      The Hoffman Parties move for relief from the automatic stay on a number of claims.**

In 2015, Black Elk Energy Offshore Operations, LLC (the "Debtor") entered into an involuntary Chapter 7 bankruptcy proceeding that was later converted into a voluntary Chapter 11 case.  *See* Dkt. Nos. 1, 69, 75.  Those filings triggered the automatic stay under 11 U.S.C. § 362(a).

Black Elk Energy, LLC; Black Elk Management, LLC; Black Elk Employee Incentive, LLC; Freedom Well Service, LLC; Iron Island Technologies, LLC; and John Hoffman (the "Hoffman Parties") sought relief from that automatic stay when they filed their Emergency Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (Dkt. No. 987).  In that motion, the Hoffman Parties described themselves as "creditors and equity holders in the Debtor" who wished to pursue certain derivative claims "against various insiders of the Debtor for, among other things, fraud affecting the [Hoffman Parties'] equity interests."  Dkt. No. 987 at 2.

The Debtor and the Official Committee of Unsecured Creditors opposed the Hoffman Parties' motion, as did Platinum Partners Value Arbitrage Fund LP, Platinum Partners Liquid Opportunities Master Fund LP, and TKN Petroleum Offshore LLC (the "Platinum Parties").  *See* Dkt. Nos. 1131, 1132, 1138.  The Platinum Parties and related entities owned a controlling interest in the Debtor before the bankruptcy.  *See* Dkt. No. 115.

**B.      At the hearing on their motion, the Hoffman Parties orally describe in scant detail a new Tax Claim and seek relief from the stay on that claim as well.**

The Hoffman Parties changed tactics at the hearing on their motion.  They sought relief from the automatic stay not only on the derivative claims they described in their motion, but also

2

on a new claim involving the Platinum Parties and possibly others preventing the Debtor from

making a tax distribution to its shareholders (the "Tax Claim").   The Hoffman Parties orally

described this Tax Claim as follows:

> Platinum has run rough shot [sic] over everything obviously, and so we're going
> to seek to hold them responsible for a lot of stuff.  The cancellation of Debtors of
> tax makeup issue is a violation of the company agreement.  It affects the members
> directly.  It was directed by the individuals that Platinum installed in the company
> so they are one potentially liable set of Defendants, yes.
>
>  . . . .
>
> [U]sing Mr. Hoffman as an example, I think he got a very . . . large tax bill as a
> result of the failure to make the tax makeup payment pre-petition.

Dkt. No. 1177 at 19-20.

Following some confusion regarding the details of the Hoffman Parties' description of

the Tax Claim, the bankruptcy court offered its view of what the claim entailed:

> I think what I heard was that Platinum was in control of the Debtor and breached
> the Shareholder Agreement to make tax distributions and they did so pre-petition
> and his client would have gotten a tax distribution that would have covered these
> damages had they followed those Agreements and that that was at Platinum's
> control.

Dkt. No. 1177 at 29.

The Platinum Parties, along with the Debtor and the Committee, argued that the

bankruptcy court should stick to the claims the Hoffman Parties described in their motion and

grant no relief on this new Tax Claim that the Hoffman Parties vaguely described at the hearing.

*See id.* at 28 ("Your Honor, we don't know exactly what claims [the Hoffman Parties] would

bring and under what theory of law.  I mean, we heard him today I think for the first time talk

about the tax lien, first time to me."); *id.* at 47-48 ("[H]e needs to give this Court enough detail in

order to be able to make that decision, but you don't have it."); *id.* at 50 ("[T]here's been a lot of

talk about other claims, . . . but all they've actually moved on is a determination that derivative claims under Texas law are not subject to the automatic stay.").

The bankruptcy court disagreed.  Despite acknowledging that the Hoffman Parties' motion "may not have made clear that there were some direct actions," it "treat[ed] this as a trial amendment" and allowed the Tax Claim to remain in the case.  *Id.* at 69.  However, acknowledging that "it may have seemed like a bit of an odd twist today," the bankruptcy court also welcomed supplemental briefing on "this tax claim question." *Id.* at 75.

In response to this invitation, the Hoffman Parties submitted no further briefing and offered no additional description of its Tax Claim beyond its oral statements at the hearing.   The Platinum Parties, the Debtor, and the Committee all submitted supplemental briefing arguing that the newly-identified Tax Claim lacked contours necessary for relief from the stay and belonged to the bankruptcy estate, and thus could not be pursued by the Hoffman Parties.  *See* Dkt. Nos. 1170, 1172, 1174.

> **C.**     **The bankruptcy court denies the Hoffman Parties relief on the claims presented in their written motion, but allows them to pursue the Tax Claim they raised at the hearing.**

In its opinion, the bankruptcy court first ruled that the derivative claims the Hoffman Parties actually described in their motion were property of the bankruptcy estate and thus subject to the automatic stay.  Dkt. No. 1224 at 2-5.  The Hoffman Parties have not appealed that ruling.

The bankruptcy court then considered the Tax Claim, defining it as follows:

> In sum, the claim alleges that Platinum wrongfully caused the Debtor to breach its company agreement, requiring the company to issue a dividend to its members for any tax liability incurred as a result of cancellation of debt income attributable to the Debtor.  [The Hoffman Parties] allege that Platinum's wrongful interference with the Debtor caused the equity holders direct harm—as opposed to harm caused to the Debtor that resulted in harm to the equity.

*Id.* at 5-6 (citation omitted).  The bankruptcy court held that the Tax Claim was a direct claim that is not property of the bankruptcy estate because while it "would have harmed all equity holders on a pro rata basis, . . . it would not be an injury to the estate that flowed through the estate to injure creditors." *Id.* at 7.

## SUMMARY OF ARGUMENT

The bankruptcy court committed two legal errors, either of which is sufficient for reversal.  The bankruptcy court first erred when it evaluated the merits of the Hoffman Parties' request for relief from the automatic bankruptcy stay on the Tax Claim despite the Hoffman Parties' failure to provide the necessary information about that claim.  That goes against the foundational bankruptcy principle that a bankruptcy court can grant relief from the stay only for claims that have been properly presented in sufficient detail.

The bankruptcy court erred again in its analysis of the merits of the Hoffman Parties' claim for relief.  The Tax Claim must proceed via a veil-piercing theory, and veil-piercing claims are property of the bankruptcy estate, not individual creditors.  That alone should have compelled the bankruptcy court to deny relief.  The merits of that outcome is confirmed by the generalized harm the Tax Claim alleges—harm that operates through the Debtor and, indeed, even involves harm to the Debtor.  Yet the bankruptcy court inexplicably held that the Tax Claim was not property of the bankruptcy estate and instead could be pursued by the Hoffman Parties.

Either of these legal errors mandates reversal.

## ARGUMENT AND AUTHORITIES

**I.     The Bankruptcy Court Erred By Granting The Hoffman Parties Relief From The Automatic Stay On Their Tax Claim Despite Their Failure To Provide The Most Basic Information About That Nebulous Claim.**

It is a basic tenet of bankruptcy law that a court can grant relief from the automatic stay only for claims a movant adequately describes and presents to the court for review:

> The court can only rule on the causes of action alleged in the pleadings that have been presented to the court for its review.  The court cannot speculate (much less rule) on what other causes of action, whether in pleadings not furnished to this court, or in future pleadings, might or might not constitute property of the bankruptcy estate.

*In re Caspri Corp.*, No. 07-30485-LMC, 2010 WL 743914, at *2 n.6 (Bankr. W.D. Tex. Feb. 25, 2010).  That makes sense, because the analysis required to grant relief from the stay focuses on the particular claims and parties at issue.

Answering the preliminary question of whether the automatic stay applies to the claims presented for relief necessarily entails a detailed analysis of the particulars of those claims.  The automatic stay applies to "proceedings against the debtor," 11 U.S.C. § 362(a)(1), and to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,"  11 U.S.C. §  362(a)(3).  Whether a claim falls into either of those categories depends on its specifics, including the manner in which it pleaded, the supporting allegations, and the parties involved.  *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147-50 (5th Cir. 1987) (discussing the analyses under § 362(a)(1) and § 362(a)(3)).

The particulars of the claim and its supporting allegation are especially important when the issue is whether the claim in question is property of the bankruptcy estate.  Indeed, the Fifth Circuit has explained that the question of "[w]hether a specific cause of action belongs to a bankruptcy estate is . . . decide[d] *by reference to the facial allegations in the complaint.*"  *In re Seven Seas Petrol.*, 522 F.3d at 583 (emphasis added).

Despite these well-established bankruptcy principles, the Hoffman Parties utterly failed to adequately describe their Tax Claim.  They made no mention of the Tax Claim whatsoever in their motion, waiting until the hearing to announce it orally.  And even then, the Hoffman Parties

6

were stingy on the specifics of this claim, providing only the smallest hints of its contours.  They

explained that "[t]he cancellation of Debtors of tax makeup issue is a violation of the company

agreement . . . [that] affects the members directly" and that "[i]t was directed by the individuals

that Platinum installed in the company so they are one potentially liable set of Defendants."  Dkt.

No. 1177 at 19.  Then the Hoffman Parties offered the example of Mr. Hoffman, who they

"think . . . got a very . . . large tax bill as a result of the failure to make the tax makeup payment

pre-petition."  *Id.* at 20.  And that was it.  The Hoffman Parties offered no further details after the

hearing—and they certainly did not file a proposed pleading in the bankruptcy court fleshing out

their Tax Claim.

With only this sparse information about the Tax Claim before it, the bankruptcy court

should have denied relief because "[t]he court can only rule on the causes of action alleged in the

pleadings that have been presented to the court for its review."  *In re Caspri Corp.*, 2010 WL

743914, at *2 n.6.  Indeed, in this context of determining whether the bankruptcy estate owns a

claim, the analysis is impossible without reference to a proposed pleading.  That is why the Fifth

Circuit explained that "[w]hether a specific cause of action belongs to a bankruptcy estate

is . . . decide[d] *by reference to the facial allegations in the complaint."  In re Seven Seas*

*Petrol.*, 522 F.3d at 583 (emphasis added).  And that is also why the bankruptcy court required

another party seeking relief from the stay on a similar motion in this same bankruptcy

proceeding to file a proposed pleading that clearly defined the contours of its claims.  *See* Dkt.

No. 1243 at 32-34.

Yet here, the bankruptcy court violated these legal principles and held that the Tax Claim

is not property of the estate and thus not subject to the automatic stay.  *See* Dkt. 1224 at 5-7.

Even though the bankruptcy court lacked the necessary information to analyze whether the Tax

Claim belonged to the Hoffman Parties or the bankruptcy estate, it granted relief anyway.  That was legal error.

**II.     The Bankruptcy Court Erred By Granting The Hoffman Parties Relief From The Automatic Stay Because The Bankruptcy Estate Possesses Exclusive Standing To Pursue The Tax Claim.**

The bankruptcy court erred again when it confronted the substance of the Tax Claim. The factual breadcrumbs the Hoffman Parties provided the bankruptcy court and the parties to the bankruptcy proceeding (many of whom opposed the Hoffman Parties' motion to lift stay) regarding that claim demonstrate that it belongs exclusively to the bankruptcy estate.  The bankruptcy court thus erred when it held the opposite and granted the Hoffman Parties leave to pursue that claim themselves.

The Fifth Circuit in *Schimmelpenninck v. Byrne* (*In re Schimmelpenninck)* identified three categories of claims to assist courts in determining whether the bankruptcy estate or a creditor has standing to pursue a particular cause of action.  *See* 183 F.3d 347, 359-60 (5th Cir. 1999).  These categories are "1) Actions by the estate that belong to the estate; 2) Actions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors; and 3) Actions by individual creditors that affect only that creditor personally." *Id*. at 360.  The Fifth Circuit further explained that "[t]he trustee is the proper party to advance the first two of these kinds of claims, and the creditor is the proper party to advance the third." *Id*.

The Tax Claim falls into the first *Schimmelpenninck* category because it belongs to the bankruptcy estate.  As described by the bankruptcy court, the Tax Claim "alleges that Platinum wrongfully caused the Debtor to breach its company agreement, requiring the company to issue a dividend to its members for any tax liability incurred as a result of cancellation of debt income attributable to the Debtor," and thus "Platinum's wrongful interference with the Debtor caused the equity holders direct harm—as opposed to harm caused to the Debtor that resulted in harm to

8

the equity." Dkt. 1224 at 5-6. Accordingly, as envisioned by the bankruptcy court, the Tax Claim centers on the allegation that the Platinum Parties directed the Debtor not to make distributions to the Hoffman Parties and other equity holders. And that necessarily depends on the allegation that the Platinum Parties control the Debtor's distribution conduct.

Because the Tax Claim reaches the Platinum Parties only through their alleged control of the Debtor's alleged misconduct, the Hoffman Parties would need to pierce the corporate veil between the Platinum Parties and the Debtor. But piercing the Debtor's corporate veil is a remedy reserved exclusively for the estate: "[An] alter ego action is a right of action belonging to [the debtor] and, as such, is 'property of the estate . . . .'" *In re S.I. Acquisition*, 817 F.2d at 1153. As the Fifth Circuit explained in *In re S.I. Acquisition*, "[t]he doctrine of alter ego does not rest upon a particular creditor's dealings with or reliance on the control entity, nor does the doctrine require a showing of fraud on a particular creditor." *Id.* at 1152. Rather, it is "available to all creditors of the corporation so long as the requisite melding of the corporation and its control entity are established." *Id.* More importantly, the debtor itself may take advantage of the alter ego remedy. It "may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations." *Id.* at 1152-53. The remedy of piercing the Debtor's corporate veil thus belongs to the Debtor alone, and, for that reason, the Tax Claim based on that theory belongs to the Debtor. *Cf. In re Schimmelpenninck*, 183 F.3d at 360 (holding that a veil-piercing claim was property of the estate and noting that "[e]ven though Byrne attempts to sue HANS, a non-debtor third party, his action is grounded in a claim against the Debtor only").

That end result would not change even if it were possible for the Hoffman Parties to pursue their Tax Claim without veil-piercing. At best, that would place the Tax Claim into the

second *Schimmelpenninck* category because it "assert[s] a generalized injury to the debtor's estate, which ultimately affects all creditors." 183 F.3d at 360. The Platinum Parties' alleged role in causing the Debtor to breach the Shareholder Agreement and preventing the Debtor from making distributions to equity holders harmed all equity holders in the Debtor, not only the Hoffman Parties. Indeed, Mr. Hoffman himself has testified that the alleged misconduct underlying the Tax Claim had a generalized impact. In his June 7, 2016 deposition, Mr. Hoffman explained that the Debtor's actions had a "crippl[ing]" "impact[ on] everyone's taxes," that is the taxes of "[a]ny equity holder." *See* 1172-1 at 3-4. He then went on to explain that the conduct underlying the Tax Claim "relates to the debtor and all parties that are involved with the debtor." *Id.* at 6.[2]

The alleged conduct underlying the Tax Claim also affected the Debtor directly by exposing it to potential legal liability by refraining from making the distributions. As the bankruptcy court acknowledged, the Tax Claim rests on the allegation that "Platinum was in control of the Debtor and breached the Shareholder Agreement to make tax distributions." Dkt. No. 1177 at 29. Any finding on the Debtor's breach of the Shareholder Agreement—which is a necessary element of the Tax Claim—implicates the Debtor's interests through its potential preclusive effects. More broadly, whatever actions the Debtor took regarding the distributions certainly had an effect on the Debtor. And all of these effects on the Debtor necessarily affect all the creditors, including the Hoffman Parties. Thus, at a minimum, the Tax Claim falls into the second *Schimmelpenninck* category and remains outside the reach of the Hoffman Parties.

---

[2] The bankruptcy court found this point unconvincing because it reasoned that while the "alleged tax claim would have harmed all equity holders on a pro rata basis, . . . it would not be an injury to the estate that flowed through the estate to injure creditors." Dkt. No. 1224 at 7. But that misunderstands the path of the harm here. The Platinum Parties' alleged misconduct towards the Debtor was the first step in the harm, and that harm reached the shareholders themselves only through the Debtor. It was the Debtor's actions in not making the distributions that allegedly caused the generalized harm to all its shareholders (including the Hoffman Parties).

Ultimately, determining whether the Tax Claim falls into the first or second *Schimmelpenninck* category is not important, because either option yields the same result: the Tax Claim is property of the bankruptcy estate.  The key is that the Hoffman Parties can prevail only if the Tax Claim falls into the third category—comprising "[a]ctions by individual creditors that affect only that creditor personally"—which it clearly does not.  As detailed above, the Tax Claim affects much more than "only th[e] creditor personally."  It affects all of the equity holders, and indeed even the Debtor itself.  The Tax Claim thus does not meet the criteria for the third *Schimmelpenninck* category.  The bankruptcy court erred by holding otherwise.

## CONCLUSION

For the foregoing reasons, the Platinum Parties respectfully request that the Court reverse the part of the Bankruptcy Court's July 26, 2016 Order that grants the Hoffman Parties relief on the Tax Claim and hold that the Hoffman Parties lack standing to pursue the Tax Claim.  The Platinum Parties also request any further relief to which they may be entitled.

Dated:  October 12, 2016

Respectfully submitted,

/s/ Omar J. Alaniz

BAKER BOTTS L.L.P.
Danny David
State Bar No. 24028267
danny.david@bakerbotts.com
Kevin T. Jacobs
State Bar No. 24012893
kevin.jacobs@bakerbotts.com
Omar J. Alaniz
State Bar No. 24040402
omar.alaniz@bakerbotts.com
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-4055

*Counsel to Platinum Partners Value Arbitrage*
*Fund LP, Platinum Partners Liquid*
*Opportunities Master Fund LP, and TKN*
*Petroleum Offshore LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 12, 2016, a true and correct copy of the foregoing was served via electronic means to all parties entitled to receive notice in this case through the Court's ECF system.

*/s/ Omar J. Alaniz*
Omar J. Alaniz
